UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:19-cv-00427

**Gallagher Benefit Services, Inc. et al.,**
*Plaintiffs,*
v.
**Ellen Richardson,**
*Defendant.*

Before BARKER, *District Judge*

## ORDER

Plaintiffs, referred to collectively as "Gallagher," accuse defendant Ellen Richardson of breaking the noncompete and nondisclosure clauses of her employment contract. Gallagher seeks a preliminary injunction that blocks Richardson from competing in certain ways. For the reasons set forth below, that request is **granted in part** and **denied in part**.

### Background

Ellen Richardson worked as an insurance consultant for Arthur J. Gallagher & Co. and its subsidiary, Gallagher Benefit Services, Inc. Gallagher gave Richardson clients to service for the company, and Richardson in turn signed an employment agreement that included a noncompete clause and a nondisclosure clause. The first clause required Richardson not to recruit or service any of her Gallagher clients for two years after she stopped working there. The second clause required Richardson not to disclose or use confidential Gallagher information after she stopped working there.

In August 2019, Gallagher ended Richardson's employment. A few months later, Gallagher sued Richardson, alleging that she went to work for a competitor and (1) misappropriated Gallagher trade secrets, in violation of federal law; (2) kept and used Gallagher records in violation of the

nondisclosure clause by emailing herself a "producer report" containing names and contact information for Gallagher clients; and (3) violated the noncompete clause by soliciting business from and servicing Gallagher's former clients. Richardson does not dispute that she emailed herself the producer report or that she is now servicing over 60 former Gallagher clients. Richardson does dispute whether the clauses are enforceable, as well as Gallagher's other allegations.

Gallagher moved for a preliminary injunction that would (1) prohibit Richardson, until two years after her termination, from soliciting business from and servicing former clients of hers at Gallagher; (2) prohibit Richardson from making use of Gallagher trade secrets and confidential information; and (3) require Richardson to return and destroy copies of the producer report and all other Gallagher proprietary information.

Richardson opposes the motion. She also seeks a transfer of venue to the Western District of Louisiana. Although Richardson lives in Texas (very close to the state line), Gallagher's office was in Shreveport, Louisiana. And Richardson argues that the clients she services were also in Louisiana. The venue motion will be addressed by separate order.

On January 27, 2020, the court held a hearing and received evidence on the preliminary-injunction motion. The court then invited supplemental briefing on two topics (*see* Doc. 28):

- What amount of security, if any, should plaintiffs provide to satisfy Federal Rule of Civil Procedure 65(c) in the event that plaintiffs prevail on their application for preliminary injunction?

- What evidence is there, if any, to support plaintiffs' argument that defendant's current clients would have stayed with plaintiffs had defendant not continued to provide services to those clients?

Gallagher filed supplemental briefing that did not address the court's first question—what bond Gallagher should post if it won a preliminary injunction. Instead of addressing how

to secure Richardson against any loss from a wrongful injunction, Gallagher addressed its own alleged loss. Doc. 45. Gallagher also argued that it need not show irreparable injury to get a preliminary injunction. *Id.* Gallagher did argue that, if irreparable injury were required, some unspecified percentage of its former clients may have stayed with it through the current time and into the future (such that their lost revenue could be addressed by prospective relief). But Gallagher did not submit evidence on what percentage of its clients would have stayed if Richardson had abided by her agreement—in other words, what evidence showed the extent of its alleged irreparable injury.

Richardson argued that, a preliminary injunction could wrongfully restrain Richardson from servicing her existing clients—requiring a bond insuring her against that harm. Richardson did not argue that any bond would be required for an injunction against her recruiting new clients or using the Gallagher producer report. Doc. 46. Richardson also argued that the court could not draw the factual inference that the former Gallagher clients at issue would have stayed with Gallagher through the present, or would now return to Gallagher if Richardson could no longer service those clients. Richardson argued that such a conclusion requires evidence, not inference, given that the Gallagher employee in Shreveport who could have serviced those clients quit his job there.

Gallagher then moved to strike the affidavit that Richardson attached to her supplemental briefing. The court finds that affidavit ultimately immaterial given the court's resolution of the preliminary-injunction motion. So Gallagher's motion to strike is **denied as moot**. Gallagher's choice to move to strike a responsive affidavit when Gallagher's own supplemental briefing was not fully responsive to the court's order will bear on reasonableness of any fees sought in this matter.

**Analysis**

Gallagher wrongly argues that it need not show irreparable injury at this stage. A preliminary injunction, as an exercise of the federal courts' equitable power, is governed by the traditional principles of equity set forth by federal courts. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999). Those requirements for a preliminary injunction are a matter of federal remedial power, not state law. *See* Charles Alan Wright et al., *Federal Practice & Procedure* § 4513 (3d ed.) ("It seems reasonably clear that preliminary injunctions or temporary restraining orders may be issued in a diversity case in accordance with the terms of Rule 65 regardless of state practice, and further that federal law supplies the standards for their issuance.").

So even if a state court would not require proof of irreparable injury at this stage, it remains one of the four showings that a moving party must make to obtain a preliminary injunction in federal court. Those four showings, now well-established, are (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any potential injury to defendant if the injunction is granted, and (4) that granting the injunction will not disserve the public interest. *Brock Services, L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019). The moving party carries the burden of persuasion on all four factors.

Gallagher has shown a substantial likelihood of success on its claims. Gallagher has also shown a sufficient risk of irreparable injury if Richardson is allowed to recruit current Gallagher clients or to keep and use the producer report. But Gallagher has not provided sufficient evidence to allow the court to find an injunction-meriting risk of irreparable injury from Richardson continuing to service her existing clients for the remainder of the two years following her termination.

### 1. Substantial likelihood of success

Gallagher has shown a substantial likelihood of success on the merits of its three claims: (a) breach of the noncompete clause, (b) breach of the nondisclosure clause, and (c) violation of the federal Defend Trade Secrets Act claim.

#### a. Noncompete clause

As a preliminary matter, the parties disagree whether Texas law or Louisiana law applies to the contract's provisions. The contract provides that Texas law governs because Richardson lives here. Richardson, however, argues that Louisiana law governs.

Texas conflict-of-law principles would determine the enforceability of the contract's choice-of-law provision because Texas is the forum state. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). But applying that law to determine which state's substantive law controls is unnecessary at this time. When the outcome would be the same under either state's law—where there is no conflict—a court need not engage in the choice-of-law analysis. *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 924 F.3d 682, 697 (5th Cir. 2019). And Gallagher is likely to succeed on the merits whether Texas or Louisiana substantive law applies to its claim of breach of the noncompete clause.

The noncompete clause provides in relevant part:

> For a period of two (2) years following the termination of Employee's employment with the Company for any reason whatsoever, Employee will not, directly or indirectly, solicit, transfer, place, market, accept, aid, counsel or consult in the placement, renewal, discontinuance or replacement of any insurance . . . or handle . . . other insurance administrative or service functions ("insurance services") or provide employee benefit brokerage, consulting, or administration services; . . . for: (x) any Account of the Company for which Employee performed any of the foregoing functions

during any part of the two-year period immediately preceding such termination (referred to hereinafter as "Protected Accounts"), or (y) any Prospective Account of the Company (as defined below).

Doc. 19 at 2-3. Richardson admits that she is engaging in conduct violating the clause. But she argues that the clause is unenforceable for several reasons. Richardson, however, does not have a likelihood of success on those defenses, under either Louisiana or Texas law.

### i. Louisiana law

Louisiana Revised Statute 23.921 governs the enforceability of any contract that restrains a person from exercising a lawful profession, trade, or business of any kind; a contract not meeting the statute's requirements is "null and void." La. Rev. Stat. § 23.921(A)(1). The statute provides that an "employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment." *Id.* § 23.921(C).

The noncompete clause appears to comply with the statute. Richardson agreed not to provide services similar to those provided by Gallagher. The employment contract contained a schedule of parishes and municipalities in which Gallagher conduct business. And the duration of the obligation under the clause is two years. In fact, the clause is narrower than the statute would allow because Richardson was only restricted from providing services to certain clients—those for whom she had provided services within two years of her termination and "Prospective Accounts of the Company." Richardson does not raise much doubt that she is employed by a competing business, providing services prohibited by the enforceable noncompete clause. La. Rev. Stat. § 23.921(D).

Richardson's other defense seems to be either the doctrine of prior material breach or the doctrine of unclean hands. She argues that Gallagher did not give her certain termination pay required by the contract. But the court finds it unlikely that any such breach, even assuming it occurred for the sake of analysis, would be material to the noncompete clause or sufficiently related to it for purposes of unclean hands.

### ii. Texas law

Under Texas law, an enforceable covenant not to compete must be ancillary to or part of an otherwise enforceable agreement. Tex. Bus. & Com. Code § 15.50(a). That requirement is met where, in an at-will employment contract, the employee promises not to disclose confidential information, the employer expressly or impliedly promises to provide confidential information, and the employer does provide confidential information throughout the employee's employment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009).

Here, the parties entered into an at-will employment contract under which Richardson promised not to disclose confidential information and Gallagher promised to, and did, provide her with confidential information regarding its clients. Gallagher is likely to prevail on the merits of this requirement of enforceability.

Texas law also requires that, if a covenant not to compete has "limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary . . . , the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary." Tex. Bus. & Com. Code § 15.51(c). Where the court must conduct this reformation, "the court may not award the promisee damages for a breach of the covenant before its reformation and the

relief granted to the promisee shall be limited to injunctive relief." *Id*. Because the court is empowered to reform the noncompete agreement to comply with the reasonableness and "no-greater-than-necessary" requirements, the court will not, at this time, fully evaluate the agreement's compliance with those requirements. Suffice it to say, they do not strike the court as a likely bar to Gallagher's success on the merits.

The court also finds Richardson unlikely to prevail on her defenses of prior material breach or unclean hands, for the reasons given above.

### b. Nondisclosure clause

Gallagher argues that Richardson breached the nondisclosure clause of her employment contract by misappropriating confidential and trade-secret information to solicit Gallagher's clients. Doc. 19 at 11. Richardson did not respond to that argument (*see* Doc. 28), and the subsequent briefing did not address it (*see* Docs. 36 & 38).

Nondisclosure agreements in Texas are not against public policy, are not subject to the requirements placed on covenants not to compete, and are analyzed as any other contract provision. *In re Mktg. Inv'rs Corp.*, 80 S.W.3d 44, 47-48 (Tex. App. 1998); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App. 1992).

In Louisiana, nondisclosure agreements are not subject to the statutory framework that applies to noncompete agreements and they are enforceable if the information is, in fact, confidential. *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 625 (W.D. La. 2010) (citing *NCH Corp. v. Broyles*, 749 F.2d 247, 253 (5th Cir. 1985)). Confidential information includes information that is "stated to be confidential," information the agent should know the principal would prefer be kept secret or not be used in competition against him, and "unique business methods of the employer, trade secrets, lists of names and all other matters which are peculiarly known in the employer's business." *Id*. at 626.

Upon a review of the exhibits and evidence, and noting that Richardson has not argued to the contrary, the court concludes that Gallagher has shown a substantial likelihood of success, regardless of whether Texas or Louisiana law applies, on its claim that Richardson breached the nondisclosure clause by keeping and referencing the producer report.

### c. Defend Trade Secrets Act claim

Gallagher has also established a likelihood of success on the merits of its claim that Richardson violated the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1831-1839, by misappropriating confidential and trade-secret information to solicit Gallagher's clients. Doc. 19 at 12. Richardson did not respond to Gallagher's argument on this point (*see* Doc. 28), and the subsequent briefing did not address it (*see* Docs. 36 & 38).

The Defend Trade Secrets Act provides that a person who,

> with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly
>
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information

violates the act. 18 U.S.C. § 1832(a).

The term "trade secret" includes

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices,

formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Id*. § 1839(3). "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Id*. § 1836(b)(1).

The court concludes that Gallagher has shown a substantial likelihood of success on the merits of its argument that the producer report is a trade secret within the meaning of the Act and that Richardson violated the Act with intent to convert a trade secret. Again, Richardson did not respond to this claim, and it is not disputed that Richardson emailed herself the producer report and is now serving over 60 former Gallagher clients.

### 2. Substantial threat of irreparable harm

The court will enter a preliminary injunction only if the movant faces a substantial threat of irreparable harm before final judgment absent the injunction. The movant must show that irreparable harm is likely, rather than just possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). This factor does not focus on the magnitude of the harm, but the irreparability. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008).

In a case where misappropriation of a trade-secret database of confidential information is at issue, this court has held that irreparable harm existed where the defendant could derive a benefit from that database "without first investing the time, expense, and labor necessary to research and compile the confidential information." *AHS Staffing, LLC v. Quest Staffing Group, Inc.*, 335 F. Supp. 3d 856, 873 (E.D. Tex. 2018) ("Any calculation of monetary damages would fail to fully appreciate the harm done by Defendants' developing a more robust database by skipping the necessary research and development undertaken by every other competitor."). *See also Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335-36 (5th Cir. 2013).

This case is similar. Richardson allegedly misappropriated a report constituting a database of information about Gallagher's clients. Richardson would not have otherwise had that information available to her at her new job. She and her new employer stand to benefit from that compilation of data, which was created by, and from information known only to, Gallagher and its employees. The court finds a substantial likelihood of irreparable harm from Richardson's possession and use of the alleged trade-secret, confidential information.

As to the violation of the noncompete clause, irreparable harm may be shown where future damages would require quantification estimates that can be avoided by an injunction that prevents the damages in the first place. That is the case here with respect to Richardson recruiting or working for any current Gallagher clients. The status quo will be preserved.

Gallagher has shown itself likely to be contractually entitled, for the specified time period, not to have Richardson as a competitor for its current clients. If those clients do leave in the future, as a result of Richardson's competition, Gallagher will no doubt attempt to quantify its damages. But that quantification will involve estimates and thus potential undercompensation. That irreparable harm can be avoided by an injunction against Richardson's competition for those current

Gallagher clients. Courts routinely enjoin prohibited competition in these circumstances.[1]

As to clients that have left Gallagher and are now being serviced by Richardson, the court finds some modicum of irreparable harm to Gallagher from continuing to face Richardson's competition for those clients. Facing an additional competitor in the marketplace is, by itself, a form of harm that cannot easily be quantified and may escape full compensation in damages.

At the same time, Gallagher has not shown that the risk of irreparable harm is as serious for this set of clients. Gallagher argues that the court can infer that some of these clients would return to Gallagher with Richardson excluded as a competitor because the clients were once with Gallagher. But the degree to which that inference is supported turns on facts not sufficiently developed at this stage, such as Gallagher's capacity to service those clients and other business considerations. Gallagher has the burden of proof on a preliminary injunction. And the court does not find the inference sought by Gallagher sufficiently supported by the facts, at least if the inference is to extend beyond the abstract possibility of some unspecified quantity of clients returning to Gallagher.

Thus, the court finds that Gallagher has established some irreparable harm from having an additional competitor, but has not sufficiently proved that removing that competitor via injunction would cause any particular quantity of clients to return to Gallagher and thus forestall the need for a damages

---

[1] *Inter/Nat'l Rental Ins. Servs., Inc. v. Albrecht*, No. 4:11-cv-00853, 2012 WL 4506140, at *5 (E.D. Tex. Mar. 14, 2012); *WorldVentures Mktg., LLC v. Rogers*, No. 4:18-cv-00498, 2018 WL 4169049, at *7 (E.D. Tex. Aug. 20, 2018); *McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 858-59 (W.D. Tex. 2016); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569-71 (S.D. Tex. 2014); *Brink's Inc. v. Patrick*, No. 3:14-cv-775-B, 2014 WL 2931824, at *6-8 (N.D. Tex. June 27, 2014); *MedX Inc. of Fla. v. Ranger*, 780 F. Supp. 398, 404-05 (E.D. La. 1991); *J.P. Morgan Sec. LLC v. Manne*, No. 16-818-JWD-RLB, 2016 WL 7223358, at *3 (M.D. La. Dec. 12, 2016).

calculation in the first place. There is some conceptual risk of irreparable harm absent a preliminary injunction. But it has not been shown to be a enough of a risk to warrant disrupting the status quo, as explained below.

### 3. The balance of the equities

The third preliminary-injunction factor requires balancing the risk of irreparable harm to plaintiffs against the potential harm that defendant may suffer as a result of the injunction. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 626 (5th Cir. 1985).

As to the producer report, the court finds that the balance of the equities favors enjoining Richardson to turn over and destroy all copies of the report. Richardson does not point to any particular hardship from doing so.

As to recruiting or servicing any current Gallagher clients, the court finds that the balance of the equities also favors Gallagher. Richardson does not argue a hardship from such an injunction, nor does the court perceive one.

As to Richardson's current clients, however, the court does not find that the balance of the equities favors Gallagher. As noted above, the evidence at this stage does not allow the court to find more than the abstract irreparable injury of Gallagher facing one additional competitor (Richardson) for clients that it does not currently have. Without evidence of how many additional competitors Gallagher faces in the marketplace, or of Gallagher's ability and realistic prospects of regaining any of the clients now with Richardson, Gallagher has not met its burden of showing more than this minimal extent irreparable injury. That minimal extent alone does not convince the court to exercise its discretion to enter a preliminary injunction as to those clients.

Notably, other courts have also been hesitant to eliminate a defendant's book of business where the plaintiff has not offered sufficient evidence that the clients in question would return to the plaintiff. *First W. Capital Mgmt. Co. v. Malmed*, No.

16-cv-1961-WJM-MJW, 2016 WL 8358549, at *11-12 (D. Colo. Sep. 30, 2016). Given that lack of evidence as to Richardson's existing clients, the requested injunction would "simply be punitive, rather than remedial." *Id*. at 12.

**4. The public interest**

The court finds no compelling public interest, as opposed to the parties' private interest, in whether a preliminary injunction is granted or denied.

## Preliminary Injunction

For the reasons set forth above, the court **grants in part** and **denies in part** plaintiffs' motion for a preliminary injunction.

The court hereby **orders** that defendant Ellen Richardson, her agents, servants, employees, and attorneys and any others in active concert or participation with them are:

1. **Prohibited**, whether alone or in concert with others, from directly or indirectly soliciting, transferring, placing, marketing, accepting, aiding, counseling, consulting, handling, or providing insurance and/or benefit services for any account of plaintiffs' for which Richardson performed such similar services during the two years preceding her termination from Gallagher, *except for* those accounts for which she was already providing such services as of today, March 24, 2020.
2. **Prohibited** from making use of confidential, proprietary, and trade-secret information belonging to plaintiffs for any reason, including solicitation of any of plaintiffs' current clients.
3. **Required** to return to plaintiffs forthwith all confidential, proprietary, and trade-secret information belonging to plaintiffs that is still within Richardson's possession, including all files of and information regarding plaintiffs' clients (such as the disputed producer report). If any such material is in electronic form, it must first be returned to plaintiffs' counsel in both hard copy and electronic format,

and then Richardson must immediately delete all electronic forms of the information such that she no longer possesses any of the information. This paragraph does not apply to information, documents, or other materials properly obtained in the course of this litigation by discovery, disclosure, or other means.

The court finds that, even if Richardson can later show that she was wrongfully restrained by this order, she will not have been substantially damaged by its terms. Therefore, the court will not require plaintiffs to provide security under Federal Rule of Civil Procedure 65(c).

The procedures at the preliminary-injunction stage are less formal than at trial, and the court may rely on otherwise inadmissible evidence, including hearsay evidence. *Sierra Club, Lone Star Chapter v. Fed. Deposit Ins. Co.*, 992 F.2d 545, 551 (5th Cir. 1993). Therefore, plaintiffs' evidentiary objections (Docs. 42 and 43) are **overruled.** As noted above, plaintiffs' motion to strike (Doc. 48) is similarly **denied as moot.**

*So ordered by the court on March 24, 2020.*

J. CAMPBELL BARKER
United States District Judge